1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

DINORA MARTINEZ,                          )
                                          )
            Plaintiff,                     )
                                          )
      v.                                   )          3:10-cv-00287-RCJ-RAM
                                          )
BANK OF AMERICA NATIONAL                   )          **ORDER**
ASSOCIATION, et al.,                       )
                                          )
            Defendants.                    )
                                          )
_____

Currently before the Court is Defendant Litton Loan Servicing LP's ("Litton") Motion to Dismiss (#3) filed on May 20, 2010 and Defendant Quality Loan Service Corporation's ("Quality") Motion to Dismiss (#8) filed on May 24, 2010. Plaintiff Dinora Martinez ("Plaintiff") filed an Opposition (#11) on June 1, 2010. Litton filed a Reply (#12) on June 3, 2010 and Quality filed a Reply (#14) on June 6, 2010. Defendant Bank of America National Association ("Bank of America") filed a Joinder (#15) to the motions to dismiss.

Also before the Court is Plaintiff's Motion to Remand (#10) filed on June 1, 2010. Quality filed an Opposition to Plaintiff's Motion to Remand (#13) on June 6, 2010, and Plaintiff filed a Reply (#18) on June 16, 2010.

The Court heard oral argument on the motions on October 4, 2010.

## BACKGROUND

Plaintiff filed a Complaint in the Second Judicial District Court of the State of Nevada ("Second Judicial District Court") on April 13, 2010. Plaintiff's claims for relief stem from an alleged wrongful foreclosure that occurred on property located at 3205 Fairway Drive, Sparks,

1    Nevada. Plaintiff asserts that the foreclosure was wrongful because various notice provisions
2    found in the deed of trust were not incorporated in the notice of default filed on the property.
3    Because of this alleged failure, Plaintiff argues that the foreclosure sale that occurred on the
4    subject property should be vacated.

5         In addition, Plaintiff filed two claims for relief based on the allegation that Quality
6    violated Nevada's Fair Debt Collection Practices Act and Nevada's Unfair and Deceptive Trade
7    Practices Act. Plaintiff also filed a claim for relief against Bank of America seeking declaratory
8    relief. According to that claim, a "participation agreement between [Bank of America] and the
9    United States Department of Treasury constitutes a 'third party beneficiary contract' running
10   in favor of Plaintiff." (Notice of Removal (#1-2) at 8). The foreclosing of Plaintiff's property
11   allegedly constituted a breach of that contract and Plaintiff seeks a declaratory judgment that
12   she is "in fact and law such [a] third party beneficiar[y]." Id.

13        Defendant Litton and Defendant Quality have filed motions to dismiss the claims
14   asserted against them. Defendant Bank of America has filed a joinder in the motions to
15   dismiss. Plaintiff has also filed a motion to remand. Because the Court cannot rule on the
16   motions to dismiss if it lacks jurisdiction, the Court will first determine whether the case should
17   be remanded to state court.

18                              **DISCUSSION**

19   **I. Motion to Remand**

20        Under 28 U.S.C. § 1441, "a defendant may remove an action filed in state court to
21   federal court if the federal court would have original subject matter jurisdiction over the action."
22   Moore-Thomas v. Alaska Airlines, Inc., 553 F.3d 1241, 1243 (9th Cir. 2009). "Only state-court
23   actions that originally could have been filed in federal court may be removed to federal court
24   by the defendant." Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d
25   318 (1987). As such, in order for removal to be proper, there must either be federal-question
26   jurisdiction or diversity of citizenship. Id.

27        In this case, although Defendants assert that the Complaint alleges federal laws "which
28   may provide an independent basis for removal," they assert jurisdiction under the diversity

                                        2

1  statute. (Notice of Removal (#1) at 2). Thus, Defendants state that jurisdiction exists pursuant
2  to 28 U.S.C. § 1332.

3        Under 28 U.S.C. § 1332, the district court "shall have original jurisdiction of all civil
4  actions where the matter in controversy exceeds the sum or value of $75,000" and is between
5  "citizens of different States." 28 U.S.C. § 1332(a). For purposes of section 1441 and section
6  1332, "a corporation shall be deemed to be a citizen of any State by which it has been
7  incorporated and of the State where it has its principal place of business." 28 U.S.C. §
8  1332(c)(1).

9        Based on the allegations asserted in the Complaint, diversity jurisdiction exists in this
10 case. Despite the existence of diversity jurisdiction, Plaintiff requests that the Court remand
11 the action back to state court. In the motion to remand, Plaintiff does not dispute that there
12 is diversity jurisdiction over this action. Rather, Plaintiff asserts that the Court must remand
13 because the state court assumed jurisdiction over the subject property when Plaintiff filed her
14 Complaint in the Second Judicial District Court. According to Plaintiff, property cannot be
15 subject to two jurisdictions at the same time, and this Court is "precluded from exercising its
16 jurisdiction over the same res to defeat or impair the state court's jurisdiction." (Mot. to
17 Remand (#10) at 3-4). In addition, Plaintiff argues that the Court should remand the case
18 based on the power of abstention. Id. at 5.

19       Based on the foregoing, it appears that Plaintiff is arguing that remand is appropriate
20 in this case based on the "prior exclusive jurisdiction" rule. The "prior exclusive jurisdiction"
21 rule provides that "when a court of competent jurisdiction has obtained possession, custody,
22 or control of a particular property, that possession may not be disturbed by any other court."
23 State Eng'r of the State of Nevada v. South Fork Bank of the Te-Moak Tribe, 339 F.3d 804,
24 809 (9th Cir. 2003).

25       In Kline v. Burke Const. Co., the United States Supreme Court discussed the
26 application of the prior exclusive jurisdiction rule to actions in rem. 260 U.S. 226, 229, 43 S.Ct.
27 79, 67 L.Ed. 226 (1922). The Court stated that it is a "settled" rule that "where the jurisdiction
28 of the state court has first attached, the federal court is precluded from exercising its

                                        3

1 jurisdiction over the same res to defeat or impair the state court's jurisdiction." Id. The Court
2 noted that the prior exclusive jurisdiction rule applies to cases in rem specifically because
3 when a court takes "into its jurisdiction a specific thing, that res is as much withdrawn from the
4 judicial power of the other, as if it had been carried into a different territorial sovereignty." Id.
5 The Court provided that the "converse" is also true: "[W]here a federal court has first acquired
6 jurisdiction of the subject-matter of a cause, it may enjoin the parties from proceeding in a
7 state court concurrent jurisdiction where the effect of the action would be to defeat or impair
8 the jurisdiction of the federal court." Id.

9      In State Engineer, the Ninth Circuit applied this rule in the context of a water dispute in
10 rural Nevada. 339 F.3d at 804. In that case, Nevada's Sixth Judicial District Court had
11 completed an adjudication of the Humboldt River and its tributaries seventy years prior to the
12 federal case at issue. After a controversy arose regarding water rights, the South Fork Bank
13 of the Te-Moak Tribe of Western Shoshone Indians ("Te-Moak Tribe") filed a contempt
14 proceeding in state court which was later removed to federal court. Despite removal, the
15 federal court abstained from exercising its jurisdiction under Colorado River Water
16 Conservation Dist. v. United States, 424 U.S. 800, 96 S.Ct. 1236 (1976). The federal court's
17 abstention ruling was appealed and the State of Nevada argued that the federal court should
18 have dismissed the case outright for want of jurisdiction.

19      The Ninth Circuit began its analysis by reviewing the prior exclusive jurisdiction rule.
20 In its review, the court noted that property cannot "be subject to two jurisdictions at the same
21 time. The first levy, whether it were made under the federal or state authority, withdraws the
22 property from the reach of the process of the other." Id. at 810 (internal quotations and
23 citations omitted). The court then applied the prior exclusive jurisdiction rule to find that the
24 federal court lacked jurisdiction over the water dispute because "adjudication of proceedings
25 had commenced in state court long ago, and a final decree was entered decades earlier." Id.
26 at 813.

27      In this case, the prior exclusive jurisdiction rule does not apply because there is no
28 concurrent or subsequent case involving the subject property pending before the state court.

As noted by the Ninth Circuit, property cannot be subject to two jurisdictions at the same time. In Kline and State Engineer, the courts were dealing with situations where there were lawsuits either pending in the state court or already adjudicated in the state forum before a subsequent federal action was brought.  Because there were two cases, the court which first acquired jurisdiction would retain the case.

The same facts are not presented in this case.  In this matter, there is only one case pending.  Although it was initially filed in state court, it was immediately removed to federal court under diversity jurisdiction.  Upon removal, the state court lost jurisdiction.  As a result, the property is not subject to two jurisdictions at the same time and the prior exclusive jurisdiction rule does not apply.

Thus, based on the foregoing, Plaintiff's motion to remand is denied.

## II. Defendant Litton's Motion to Dismiss

Following removal, Defendant Litton filed a motion to dismiss pursuant to Rule 8 and Rule 12(b)(6) on the grounds that Plaintiff's Complaint fails to state a claim upon which relief can be granted as to Litton. (Mot. to Dismiss (#3) at 2). According to Litton, no claim for relief is stated against it because the only allegation Plaintiff makes in regard to Litton is that Litton owns Quality Loan Service Corporation.  Id.  However, Litton states that "[a]ny amount of investigation on Plaintiff's part would clearly prove Litton and Quality have absolutely no ownership interest in each other."  Id.

Plaintiff's Complaint alleges that Defendant Quality issued an improper notice of default against Plaintiff and that Quality did not have a foreign debt collection license as required by Nevada statute. As to Defendant Litton, Plaintiff solely asserts that based upon "information and belief" Litton owns Quality. (Notice of Removal (#1-2) at 2).  Plaintiff makes no other factual assertions against Litton.

Litton argues that it should be dismissed from Plaintiff's Complaint because Plaintiff (1) has not asserted any cause of action against Litton; and (2) Plaintiff's assertion that Litton owns Quality is erroneous. Litton also seeks an award of reasonable attorney's fees and costs relating to the filing of its motion to dismiss because Plaintiff failed to "perform even the most

5

cursory investigation to determine the veracity of [the] claim that Litton owns Quality." (Mot. to Dismiss (#3) at 7). According to Litton, ownership of a corporation is "easily researchable," and Plaintiff's mistake could have been avoided with any diligence on the part of Plaintiff's counsel. Id. at 7. In addition, Litton states that it brought this fact to Plaintiff's attention on several occasions, but Plaintiff's counsel refused to amend the Complaint to remove Litton as a defendant. Id.

### A. Rule 12(b)(6)

When considering a 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all material allegations in the complaint as well as all reasonable inferences that may be drawn from such allegations. LSO, Ltd. v. Stroh, 205 F.3d 1146, 1150 (9th Cir. 2000). Such allegations must be construed in the light most favorable to the nonmoving party. Shwarz v. United States, 234 F.3d 428, 435 (9th Cir. 2000). In general, the court should only look to the contents of the complaint during its review of a Rule 12(b)(6) motion to dismiss. The Ninth Circuit, however, has expanded the court's view to allow consideration of documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice, without converting the motion into a motion for summary judgment. See Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).

The analysis and purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). The court should exercise caution, however, and presume against dismissing an action for failure to state a claim. See Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997). To avoid a Rule 12(b)(6) dismissal, then, a complaint does not need detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964 (2007); Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949 (2009)(stating that "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Even though "detailed factual allegations"

are not required for a complaint to pass muster under 12(b)(6) consideration, the factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555. Additionally, the pleading should convince the court that the facts provide more than "a suspicion [of] a legally cognizable right of action." Id.

In this case, the Court denies Litton's motion to dismiss on the grounds that Plaintiff's Complaint does not assert any cause of action against Litton. Although Litton correctly states that it does not "own" Quality, there is a relationship between the two entities because Litton hired Quality to serve as the foreclosing agent on the subject property. (Mot. to Dismiss (#3) at 7). Thus, Litton is likely a necessary party in this litigation.[1]

**B. Request for Attorney's Fees and Costs**

As noted in the foregoing, Litton seeks attorney's fees and costs related to its motion to dismiss because it was improperly named as a defendant in this action. In this regard, Litton states that it was brought into this lawsuit based on the incorrect assertion in the Complaint that Litton owns Quality. Litton states that this incorrect assertion was the result of Plaintiff's counsel's failure to perform "even the most cursory investigation" into the veracity of the claim. (Mot. to Dismiss (#3) at 7). According to Litton, ownership in a corporation is easily researchable, and Plaintiff's counsel failed to conduct any inquiry, reasonable or otherwise, before naming Litton in this lawsuit. Moreover, Litton states that it brought the inaccuracy of this assertion to Plaintiff's counsel's attention on several occasions, but Plaintiff's counsel refused to amend the Complaint to correct the error. Based on the foregoing, Litton states that Plaintiff had no basis for naming Litton in the Complaint aside from "gamesmanship." Id.

Rule 11(b) states that "by presenting to the court a pleading, written motion, or other paper - whether by signing, filing, submitting, or later advocating it - an attorney or

---

[1] Although the Court denies Litton's motion to dismiss on the grounds that Plaintiff does not assert a cause of action against Litton, as will be discussed, the Court finds that the causes of action asserted in Plaintiff's Complaint are without merit and subject to dismissal for failure to state a claim. Thus, Litton's motion is granted on other grounds.

1  unrepresented party certifies that to the best of the person's knowledge, information, and
2  belief, formed after an inquiry reasonable under the circumstances" that the "factual
3  contentions have evidentiary support or, if specifically so identified, will likely have evidentiary
4  support after a reasonable opportunity for further investigation or discovery."

5  Here, Plaintiff's pleading to the Court included an inaccurate factual statement that
6  Litton owned Quality.   This inaccurate factual statement had no evidentiary support.
7  Moreover, had Plaintiff's counsel engaged in a reasonable inquiry under the circumstances,
8  Plaintiff's counsel would have discovered the inaccuracy of this assertion.   Thus, because
9  Plaintiff named Litton as a defendant in this action based on a factual inaccuracy which could
10 have been discovered upon reasonable inquiry, Plaintiff's counsel appears to have violated
11 Rule 11(b).   However, because Litton did not follow the procedural requirements of Rule
12 11(c)(2) in its request for sanctions, the Court denies Litton's request for attorney's fees.

13 Rule 11(c)(2) states: "A motion for sanctions must be made separately from any other
14 motion and must describe the specific conduct that allegedly violates Rule 11(b)." Under that
15 rule, the motion "must be served under Rule 5, but it must not be filed or be presented to the
16 court if the challenged paper, claim, defense, contention, or denial is withdrawn or
17 appropriately corrected within 21 days after service or within another time the court sets." Fed.
18 R. Civ. P. 11(c)(2). Here, Litton's request for sanctions was not made in a separate motion,
19 nor did Litton comply with the 21 day grace period established under the rule. Thus, although
20 Plaintiff appears to have violated Rule 11(b)(3) by naming Litton as a defendant based on an
21 incorrect factual assertion, the Court denies Litton's request for sanctions.

22 **III. Defendant Quality's Motion to Dismiss**

23 Defendant Quality filed a motion to dismiss the claims for relief asserted in Plaintiff's
24 Complaint pursuant to Rule 12(b)(6).[2] (Mot. to Dismiss (#8)). According to Defendant Quality,
25 the foreclosure sale that occurred on the subject property cannot be declared void because
26 the statutory sale procedure was proper under Nevada law.  In addition, any alleged debt
27
28 ─────────────────────
   [2] Defendant Bank of America filed a Joinder in the motion to dismiss (#15).

8

collection violations asserted against Quality should be dismissed because Quality, as a foreclosure trustee, does not have to be a licensed debt collector in Nevada.

In response, Plaintiff alleges that the public records offered by Quality to show that the statutory foreclosure proceedings were followed are hearsay. (Opp. to Mot. to Dismiss (#11) at 3). According to Plaintiff, "anyone can record anything at the county recorder's office by paying a filing fee," thus, there is no authenticity or correctness of the contents of the documents submitted for recording. Id. at 4. Aside from challenging the authenticity of the public record documents, Plaintiff does not address any of the substantive arguments made in Quality's motion. Specifically, Plaintiff fails to respond in any way to Quality's argument that the foreclosure proceeding was proper under Nevada law or that Quality is not a debt collector and does not have to be licensed as a debt collector in Nevada to act as a foreclosure trustee.

**A. Wrongful Foreclosure Claim**

Plaintiff's first cause of action is for injunctive relief. In the first cause of action, based on wrongful foreclosure, Plaintiff states that the notice of default filed on the subject property was invalid because it: (1) failed to include the amount of the default; (2) failed to itemize the amount necessary to cure and a date certain within which to cure; (3) failed to state that the borrowers have the right to have enforcement of the security interest discontinued if they meet certain conditions; (4) stated that the beneficiary under the deed of trust had already declared all sums secured immediate due and failed to unequivocally state that if the defaults were not cured, the amount due under the note would be accelerated and that the Trustee would conduct a foreclosure sale; and (5) did not advise the Plaintiff of her right to have enforcement of the security interest discontinued at any time before 5 days prior to the sale date if she were to meet certain conditions. According to Plaintiff, the foregoing were notice requirements contained in the deed of trust. Because the notice of default did not contain these notice requirements, the foreclosure sale that occurred on the property should be vacated.

In its motion, Quality argues that the claim for wrongful foreclosure must be dismissed because the foreclosure proceedings were proper under Nevada law. According to Quality, although the deed of trust did include certain notice provisions as indicated by Plaintiff, these

9

notice provisions did not require that such information be recorded with the notice of default. (Mot. to Dismiss (#8) at 5). Moreover, Quality states that Plaintiff has failed to assert that she did not receive the notices required by the deed of trust. Rather, Plaintiff merely states that they were not in the recorded notice of default. In support of their argument that the foreclosure proceeding complied with Nevada law, Quality attaches copies of the following documents: the deed of trust, assignment of deed of trust, substitution of trustee, notice of breach and default and election to cause sale of real property under deed of trust, notice of trustee's sale, and trustee's deed upon sale. (Mot. to Dismiss (#8-1, #8-2, #8-3, #8-4, #8-5, and #8-6)).

As noted in the foregoing, Plaintiff does not address the merit of Quality's argument, but, rather, states that the public record documents attached to the motion to dismiss have not been authenticated. Plaintiff states that she "disputes virtually every aspect of defendants' photocopies." (Opp. to Mot. to Dismiss (#11) at 3). According to Plaintiff, "[a]pparently, counsels' secretary merely provided the court with a list of what the secretary considers to be contained within the request for judicial notice." Id.

A court may take judicial notice of certain facts under Federal Rule of Evidence 201 including copies of public records. "A court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment, as long as the facts are not subject to reasonable dispute." Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

Here, the documents attached to Quality's motion to dismiss, including the Deed of Trust, Notice of Breach and Default, Notice of Trustee's Sale, and Trustee's Deed Upon Sale, all bear a file stamp from the Washoe County Recorder's office. As such, these exhibits are part of an official record and proper for judicial notice. Bouyer v. GMAC Mortg., 2009 WL 2877603 *4 at n. 3 (E.D. Cal. 2009).

Moreover, the Court finds that Quality's motion to dismiss is meritorious. First, Plaintiff provided no opposition to Quality's substantive argument on this issue. As such, under Local

Rule 7-2, Plaintiff consents to the granting of the motion.[3]  Second, Defendants complied with the non-judicial foreclosure requirements established under Nevada law.

Nevada law provides that a deed of trust is an instrument that may be used to "secure the performance of an obligation or the payment of any debt." NRS §107.020. When a debtor defaults, the creditor beneficiary may resort to its security interest in a trustee's sale as a means of satisfying the debtor's obligation.  NRS § 107.080.

The procedure for conducting a trustee's foreclosure sale in Nevada is set forth in NRS § 107.080. The foreclosure process is commenced by the recording of a notice of breach and election to sell by the trustee.  NRS § 107.080(2)(c). After the notice of default is recorded, the trustee must wait three months.  NRS § 107.080(2)(d). The trustee must then give notice of the time and place of the sale.  NRS § 107.080(4).

NRS § 107.080(3) provides that the notice of default and election to sell must "[d]escribe the deficiency in performance or payment and may contain a notice of intent to declare the entire unpaid balance due if acceleration is permitted by the obligation secured by the deed of trust. . . ."  NRS § 107.080(3)(a).  In addition, if the property is a residential foreclosure, the notice of default and election to sell must comply with the provisions of NRS § 107.087.  NRS § 107.080(3)(b).  NRS § 107.087 provides that a notice of default and election to sell must include the physical address of the property and the contact information of the trustee or the person conducting the foreclosure who is authorized to provide information relating to the foreclosure status of the property.  NRS § 107.087(1)(b).

Finally, NRS § 107.080(5) states that a "sale made pursuant to this section may be declared void by any court of competent jurisdiction in the county where the sale took place" if the "trustee or other person authorized to make the sale does not substantially comply with the provisions of this section. . . ."

Here, Plaintiff asserts that the foreclosure sale should be declared void because the notice of default and election to sell did not contain information required in the notice

---

[3] Under Local Rule 7-2(d), the "failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to the granting of the motion."

1   provisions of the deed of trust. Specifically, Plaintiff's Complaint alleges that the failure to

2   adhere to the notice provisions contained in the deed of trust constituted a substantial

3   irregularity for which the foreclosure sale should be vacated. The Court disagrees.

4        The allegations in Plaintiff's Complaint fail to establish that Defendants did not comply

5   with the requirements of NRS §§ 107.080 and 107.087 in conducting the foreclosure sale on

6   the property. Although the deed of trust may have included notice provisions following a

7   default, Nevada statutory law does not require that those notice provisions be included in the

8   notice of default filed with the county recorder. Rather, Nevada law requires that the notice

9   of default contain the physical address of the property and the contact information of the

10  trustee or person conducting the foreclosure who is authorized to provide information relating

11  to the foreclosure status of the property. See NRS § 107.087(1)(b).

12       Thus, because the foreclosure proceeding on Plaintiff's property complied with Nevada

13  law, there is no grounds to vacate the sale of the property, and Quality's motion to dismiss the

14  wrongful foreclosure claim is granted.

15       **B. Debt Collection Claims**

16       Quality also moves to dismiss the debt collection claims asserted against it in the third

17  and fourth claims for relief. In these claims for relief, Plaintiff alleges that Quality is a "debt

18  collector," and violated the Nevada Fair Debt Collection law when it filed the notice of default

19  on the subject property. According to Plaintiff, the notice of default was a "false and deceptive

20  means of collecting a debt," because it did not comply with the notice requirements found in

21  the underlying deed of trust. In addition, Plaintiff alleges Quality violated the Nevada Unfair

22  and Deceptive Trade Practices Act because Quality did not have a foreign debt collector's

23  license when it foreclosed on Plaintiff's property.

24       Quality moves to dismiss these claims on the ground that there is no basis in law

25  requiring Quality to be registered in Nevada as a debt collector. In this regard, Quality asserts

26  that it acted as the foreclosure trustee on the non-judicial foreclosure that occurred on

27  Plaintiff's property. Because it was acting solely as a foreclosure trustee, Quality argues that

28  ///

it is not a "debt collector" for purposes of Fair Debt Collection laws and did not need to register as a debt collector under the Nevada Unfair and Deceptive Trade Practices Act.

Plaintiff did not file any opposition to Quality's motion to dismiss the debt collection claims asserted against it. As such, Plaintiff consents, under Local Rule 7-2, to the granting of the motion on those claims. Moreover, Quality's arguments are meritorious. See Croce v. Trinity Mortg. Assur. Corp., 2009 WL 3172119 *2 (D. Nev. 2009)(finding that Quality is not a "debt collector" for purposes of the FDCPA); see also Duran v. Aurora Loan Services, 2009 WL 1110643 *2 (E.D. Cal. 2009)(stating that Quality was not a debt collector because "foreclosing on a property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA"). As such, these claims are dismissed.

## C. Breach of Contract

Finally, at oral argument, Plaintiff argued that the declaratory relief claim for breach of contract against Defendant Bank of America should not be dismissed because Plaintiff is a third-party beneficiary to the participation agreement entered into between Bank of America and the United States Department of the Treasury. (See Compl. (#1-2) at 8). The Court finds this argument without merit.

In this case, the Court finds that Plaintiff's declaratory relief claim for breach of contract fails to state a claim upon which relief may be granted. In Escobedo v. Countrywide Home Loans, Inc., the district court addressed the issue of whether a homeowner could sue for breach of contract on a participation agreement under the Home Affordable Modification Program. 2009 WL 4981618 (S.D. Cal. 2009). The plaintiff in that case attempted to sue on the participation agreement as a third-party beneficiary. Id. at *2. Countrywide argued that the plaintiff lacked standing to sue because he was not an intended third-party beneficiary. Id. The district court agreed with Countrywide. According to that court, "[t]o sue as a third-party beneficiary of a contract, the third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party." Id. (quoting Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1211 (9th Cir. 2000)). "One way to ascertain such intent is to ask whether the beneficiary would be reasonable in

13

relying on the promise as manifesting an intention to confer a right on him or her."  Id. (citing Restatement § 302(1)(b) cmt. d.).  In Escobedo, the court noted that the Ninth Circuit cautions that "[p]arties that benefit from a government contract are generally assumed to be incidental beneficiaries, and may not enforce the contract absent a clear intent to the contrary . . . . Government contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested."  Escobedo, 2009 WL 4981618 *2 (quoting Klamath, 204 F.3d at 1211)).

The court held that the participation agreement at issue was entered "into in part for the benefit of qualified borrowers and with these borrowers in mind."  Escobedo, 2009 WL 4981618 * 2. "However, the language of the contract does not show that the parties intended to grant qualified borrowers the right to enforce the Agreement."  Id. "Indeed, the Agreement specifies that it 'shall inure to the benefit of . . . the parties to the Agreement and their permitted successors-in-interest.'" Id. Thus, the court found that the borrowers were incidental beneficiaries of the participation agreement and do not have enforceable rights under the contract.  Id.

In Benito v. Indymac. Mortg. Services, the Nevada district court agreed with the holding in Escobar. 2010 WL 2130648 *7 (D.Nev. 2010).  In that case, the court stated that the plaintiffs had not identified anything in the Home Affordable Modification Program contract "which clearly expresses a promissory intent to benefit borrowers."  Id. Rather, according to that court, "the HAMP contract contains a provision stating that the 'Agreement shall inure to the benefit of and be binding upon the parties to the Agreement and their permitted successors-in-interest.'" Id. The court found it significant that the "Agreement nowhere states that it gives borrowers any rights or otherwise expressly intends to confer third party beneficiary status on borrowers."  Id.

The agreement at issue in this case contains a similar clause.  It provides that: "The Agreement shall inure to the benefit of and be binding upon the parties to the Agreement and their permitted successors-in-interest."  (See Servicer Participation Agreement at ¶ 11.E). Similar to Benito, the agreement does not give borrowers any rights or confer third party

14

1  beneficiary status on them.

2       Based on the foregoing, the Court dismisses Plaintiff's breach of contract claim.  The

3  Court agrees with the conclusions reached by the courts in <u>Escobar</u> and <u>Benito</u> that the

4  language of the agreement does not confer third party beneficiary status on borrowers.  <u>See</u>

5  <u>also</u> <u>Burtzos v. Countrywide Home Loans</u>, 2010 WL 2196068 *2 (S.D. Cal. 2010)(holding that

6  borrowers lacked standing to sue for an alleged breach of a servicer agreement); <u>Kamp v.</u>

7  <u>Aurora Loan Services</u>, 2009 WL 3177636 *4 (C.D.Cal 2009); <u>Villa v. Wells Fargo Bank, N.A.</u>,

8  2010 WL 935680 *3 (S.D.Cal. 2010)(adopting the reasoning set forth in <u>Escobedo</u>).

9  **CONCLUSION**

10       For the foregoing reasons, IT IS ORDERED that Plaintiff's Motion to Remand (#10) is

11  DENIED.

12       IT IS FURTHER ORDERED that Defendant Litton's Motion to Dismiss (#3) is

13  GRANTED IN PART and DENIED IN PART.  The Court denies the motion on the ground that

14  Litton is a proper party to this litigation.  However, the Court grants the motion on the ground

15  that Plaintiff has failed to state a claim upon which relief can be granted against Litton.

16       IT IS FURTHER ORDERED that Defendant Quality's Motion to Dismiss (#8) and

17  Defendant Bank of America's Joinder (#15) is GRANTED.

18       The Clerk of the Court shall enter Judgment accordingly.

19       DATED: This 20th day of October, 2010.

20

21                               United States District Judge

22

23

24

25

26

27

28

15